JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

*IN RE* **LIPITOR**

Case No.: CV 18-01725-CJC(JPRx)

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**

**I. INTRODUCTION**

This action involves 156 lawsuits filed in California state court by more than 4,300 Plaintiffs who allege that use of the drug Lipitor caused them to suffer from Type II diabetes. On March 1, 2018, Defendant Pfizer, Inc. ("Pfizer"), removed the lawsuits to this Court based on "mass action" jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). This was Pfizer's second removal of many of the lawsuits to federal court. Pfizer first removed the cases beginning on March 12, 2014, but on May 23, 2017, the Court found that removal was improper under CAFA and remanded the cases back to

state court. Specifically, the Court found that 100 or more Plaintiffs had not proposed that their cases be tried jointly as is required for mass action jurisdiction. (*See In re: Pfizer*, Case No. SAMC 17-00005-CJC-JPRx at Dkt. 20 [hereinafter, "May 23, 2017 Order"].)

Pfizer claims that since the Court remanded the lawsuits, new developments have occurred that justify another removal of the cases to federal court based on mass action jurisdiction. (Dkt. 1 [Notice of Removal] at 2.) Plaintiffs disagree and have filed a motion to remand. (Dkt. 56 [hereinafter, "Mot."].) After considering the record and arguments presented by the parties, the Court GRANTS Plaintiffs' motion to remand. Again, there has been no proposal for a joint trial involving 100 or more plaintiffs as required under CAFA.[1]

## II. BACKGROUND

### A. Original Remand

Plaintiffs are 4,321 individuals who are party to 156 separate lawsuits filed in California state court. (Dkts. 1 at 1, 1-2 at Ex. A.) Plaintiffs allege that Lipitor, a prescription drug developed and manufactured by Pfizer, and marketed and distributed by McKesson Corporation, caused them to suffer from Type II diabetes. (*See* Dkt. 1-2 at Ex. B-1.)

Beginning in March 2014, Pfizer removed the lawsuits to this Court, invoking the mass action provision of CAFA. (Mot. at 2.) The mass action provision extends federal

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 21, 2018, at 1:30 p.m. is hereby vacated and off calendar.

removal jurisdiction to civil cases where the claims of 100 or more plaintiffs "are proposed to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i). On May 23, 2017, the Court found that removal under the mass action provision was improper, and granted Plaintiffs' motion to remand. (May 23, 2017 Order.) The Court explained that only 65 Plaintiffs had proposed a joint trial by joining or seeking to join a petition to coordinate their cases in a Joint Council Coordinated Proceeding ("JCCP") pursuant to California Code of Civil Procedure section 404. (*Id*. at 11.) The Court held that the 65 Plaintiffs who voluntarily sought to join the JCCP had proposed a joint trial, but because 100 Plaintiffs had not done so, the requirements of mass action jurisdiction were not met. (*Id*. at 10–11.) Pfizer appealed this order, but the Ninth Circuit denied review.

**B. Plaintiffs Attempt to Amend the JCCP Procedure**

On June 27, 2017, back in California state court, Plaintiffs made a request to amend the procedure by which Plaintiffs could join the JCCP. (Mot. at 3.) Plaintiffs wanted to clarify that by joining the JCCP, they sought to coordinate pretrial proceedings but were not proposing a joint trial. (*Id*.) Pfizer opposed this request and argued that it conflicted with California's coordination statute, California Code of Civil Procedure section 404. (Dkt. 56-5.) On August 4, 2017, the JCCP court, Judge Carolyn Kuhl, issued an order declining to implement Plaintiffs' requests. (*See* Dkt. 56-11.) In her order, Judge Kuhl explained that she "does not have . . . a stake in how the federal courts interpret CAFA." (*Id*. at 3.) Nevertheless, she noted that it was appropriate to explain the coordination procedures of her court to aid federal courts "seek[ing] to understand California state court coordination procedures in order to apply federal law." (*Id*. at 3–4.) Judge Kuhl then proceeded to explain the following procedures:

> California law contemplates that cases will be coordinated for all purposes, not merely for pretrial proceedings. (Code of Civil Procedure section 404.1.) California procedure for coordinated cases differs in this respect

> from federal multidistrict litigation procedures. In MDL proceedings, cases must be returned to the federal district where they were originally filed when the case is ready to begin trial. (28 U.S.C. section 1407.) [. . .] Nevertheless, the fact that the [state court] coordination trial judge has the authority to try coordinated cases herself does not mean that the coordination trial judge will conduct the trial in all (or even some) of the coordinated cases, and assuredly does not mean that the coordinated cases will be tried together, either at the same time or before one jury. Coordination is a very flexible structure for case management. The ultimate goal for the coordination trial judge is to manage the coordinated complex cases in accordance with the complex case management rules so as to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties and counsel. (CRC 3.400(a).) [. . .] The ultimate determination of which cases in a coordinated proceeding will be tried by the coordination trial judge is dictated by promotion of the ends of justice.

(*Id*. at 3–5.) Judge Kuhl then explained that where, as here, the cases involved thousands of plaintiffs alleging injuries against pharmaceutical manufacturers, coordinated proceedings have never led to joint trials:

> In the 17 years since the Complex Litigation Program has been in place in California, this court is unaware of any instance in which the claims of more than one party allegedly injured by taking a pharmaceutical product have been tried at the same time or to the same jury, except in wrongful death cases where the claims of the survivors of one injured person have been tried together. Coordinated proceedings involving cases against pharmaceutical manufacturers have included more than 10,000 plaintiffs in some instances. If bellwether trials (as well as pretrial definition of issues) are unsuccessful in guiding the parties to inventory settlements, it has always been clear to the judges of the Complex Litigation Program that the coordination trial judge will have to remand cases for trial by the court in which the action was pending at the time of coordination. No single judge can conduct so many trials, and to attempt to do so would deprive plaintiffs of timely adjudication of their claims.

(*Id*. at 7–8.)

## C. Plaintiffs Attempt to Relate Cases

After Judge Kuhl declined to amend the procedure for Plaintiffs to join the JCCP, Plaintiffs tried a different approach to coordinate the cases. On October 25, 2017, Plaintiffs filed a motion to relate 62 of the cases in which a Notice of Related Case had been filed. (Dkt. 56-13.) Plaintiffs argued that relating the cases would allow Judge Kuhl to coordinate the cases without formally adding them to the JCCP. (*Id*. at 3.) Plaintiffs also requested that Judge Kuhl decline to order *sua sponte* that the cases be coordinated, as doing so would cause Pfizer to remove the cases to federal court. (*Id*. at 3 n.5.) On November 21, 2017, Judge Kuhl denied Plaintiffs' motion, in part because a JCCP had already been established for the cases. (Dkt. 58-1.)

## D. The JCCP Court *Sua Sponte* Adds Cases to the JCCP

A few days before Judge Kuhl denied Plaintiffs' motion, on November 17, 2017, Judge Debra Weintraub, the Supervising Judge of the Civil Department of the Los Angeles County Superior Court, entered an order requesting that Judge Kuhl add 62 of the cases—the same 62 that Plaintiff wanted to relate—to the JCCP. (Dkt. 56-15.) Judge Weintraub noted that no party has requested the cases be added to the JCCP, but recommended coordination because it would be "extremely burdensome" for the state court to handle the cases outside of a coordinated proceeding. (*Id*. at 3.)

On November 20, 2017, following Judge Weintraub's order, Judge Kuhl directed the parties, pursuant to California Rule of Court 3.544, to serve any opposition to Judge Weintraub's request within 10 days. (Dkt. 56-17.) On November 29, 2017, Plaintiffs filed a response. (Dkt. 56-19.) Plaintiffs did not indicate whether they objected to Judge Weintraub's request. (*Id*.) Instead, Plaintiffs informed Judge Kuhl that "Judge Weintraub's request included only a partial list of all pending California state court

Lipitor cases," and attached a list of 81 additional cases. (*Id.*) Plaintiffs claim that they did not expressly oppose Judge Weintraub's order because they considered the order a "de facto denial" of their request to refrain from *sua sponte* coordination. (Mot. at 12–13.) Pfizer did not file any response.

On December 15, 2017, Judge Kuhl issued an order granting Judge Weintraub's request, noting no opposition had been filed, and adding the 62 cases to the JCCP. (Dkt. 56-20.) Judge Kuhl also directed the parties to address whether the additional cases Plaintiffs had identified could be added to the JCCP. (*Id.* at 2.) On January 16, 2018, the parties filed a joint status report stating that they do not oppose adding the cases Plaintiffs identified to the JCCP. (Dkt. 56-21.) The parties clarified, however, that "[n]othing in this agreement shall be construed as a waiver of a party's right to remove under CAFA's mass action provision, nor shall this filing in and of itself be construed as a triggering event for CAFA mass action jurisdiction or otherwise as a 'proposal' for a 'joint trial.'" (*Id.* at 2.) On January 30, 2018, Judge Kuhl issued an order *sua sponte* adding an additional 88 cases to the JCCP. (Dkt. 58-3.)

Based on these *sua sponte* orders, Pfizer re-removed the JCCP to this Court on March 1, 2018. (Dkt. 1.) Pfizer's position is that the state court orders, which joined the cases of more than 4,000 Plaintiffs to the JCCP, resulted in a proposal for a joint trial and triggered mass action removal under CAFA. (*See generally* Dkt. 58 [Opposition, hereinafter "Opp."].) Plaintiffs contend that re-removal of the cases was improper because a judge's *sua sponte* order can never constitute a proposal for a joint trial, and even if a *sua sponte* order could constitute a proposal for a joint trial, the orders at issue here did not make such a proposal.[2] (*See generally* Mot.)

---

[2] Plaintiffs also attempt to invoke 28 U.S.C. § 1332(d)(11)(B)(ii)(II), which excludes defendant-initiated proposals for joint trials from "mass actions." Plaintiffs contend that Pfizer, the defendant, proposed the coordination of the lawsuits here because it failed to object to Judge Kuhl's orders. (Mot. at 27–30.) This argument is without merit. A "proposal" is a "voluntary and affirmative act." *Briggs v.*

-6-

## III. ANALYSIS

CAFA confers federal subject matter jurisdiction over "mass actions," which are defined as "any civil action . . . in which monetary relief claims of *100 or more persons are proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d) (emphasis added). "The statute excludes from the 'mass action' definition actions in which 'the claims are joined upon motion of a defendant,' or in which 'the claims have been consolidated or coordinated solely for pretrial proceedings.'" *Briggs*, 796 F.3d at 1042 (citing 28 U.S.C. § 1332(d)(11)(B)(ii)).

Plaintiffs in a mass action, unlike in a class action, do not seek to represent the interests of parties not before the court. *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009). However, a mass action "shall be deemed to be a class action" removable to federal court, as long as the rest of CAFA's jurisdictional requirements, including an aggregate amount in controversy above $5 million and minimal diversity, are met. *Id.* "Although CAFA[]extends federal diversity jurisdiction to both class actions and certain mass actions, the latter provision is fairly narrow. As noted above, CAFA's 'mass action' provision applies only to civil actions in which the 'monetary relief claims of 100 or more persons are proposed to be tried jointly.'" *Id.*

### A. A Court's *Sua Sponte* Order is Not a Proposal for a Joint Trial

The parties dispute *who* must propose a joint trial so as to trigger mass action jurisdiction. Specifically, the parties dispute whether a judge, who acts *sua sponte* to coordinate cases, can trigger the jurisdictional requirement. Plaintiffs contend that only a proposal by *the plaintiffs*, and not a judge's *sua sponte* order, can trigger the jurisdictional

---

*Merck Sharp & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015). Pfizer's mere failure to object does not constitute an "affirmative" act.

-7-

requirement. On the other hand, Pfizer argues that a judge's *sua sponte* order can trigger mass action jurisdiction. The Ninth Circuit has so far declined to resolve this question. *Tanoh*, 561 F.3d at 956 ("We express no opinion as to whether a state court's *sua sponte* joinder of claims might allow a defendant to remove separately filed actions to federal court as a single 'mass action' under CAFA."); *see also Briggs*, 796 F.3d at 1048 (declining to decide whether "a proposal by a state court for a joint trial would qualify as a 'proposal' under [CAFA]").

The Court finds that a state court's *sua sponte* order cannot "propose" a joint trial to trigger mass action jurisdiction. The Court's interpretation of a statute starts with the text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text."). "[B]y its plain language, CAFA's 'mass action' provisions apply only to civil actions in which 'monetary relief claims of 100 or more persons are *proposed* to be tried jointly.'" *Tanoh*, 561 F.3d at 956 (quoting 28 U.S.C. § 1332(d)(11)(B)(i))(emphasis added). To "propose," in its ordinary sense, means "to offer for consideration, discussion, acceptance, or adoption." *Briggs*, 796 F.3d at 1048 (quoting Webster's Third New International Dictionary 1819 (2002)). A judge's *sua sponte* order does not make a proposal—it does not make an offer to be accepted or rejected. Instead, an "order" is "a command or direction authoritatively given." Black's Law Dictionary online (2nd ed.). To say that a court order constitutes a "proposal" distorts and unjustifiably broadens the straightforward meaning of that word.

The Court's interpretation is also supported by the cases that have addressed this issue. For example, in *Koral v. Boeing Co.*, 628 F.3d 945, 946–47 (7th Cir. 2011), the Seventh Circuit indicated that a "state court's deciding on its own initiative to conduct a joint trial would not enable removal" under CAFA, because "[t]hat would not be a proposal." The Seventh Circuit expressly acknowledged that it was answering the question left open by the Ninth Circuit of who could make a "proposal" for a joint trial to

confer mass action jurisdiction. *Id*. (citing *Tanoh*, 561 F.3d at 956). At least one district court in this District, relying on the Seventh Circuit's opinion in *Koral* and the plain language of the statute, has reached the same result. *Alexander v. Bayer Corp.*, No. CV-16-6822-MWF (MRW), 2016 WL 6678917, at *3 (C.D. Cal. Nov. 14, 2016), *appeal dismissed*, No. 17-55828, 2017 WL 6345791 (9th Cir. July 10, 2017) ("[T]he Court agrees with Plaintiffs that a state court's *sua sponte* consolidation of cases should not automatically entitle Defendants to federal jurisdiction notwithstanding Plaintiffs' attempts to remain in state court.").

Pfizer points to the Tenth Circuit decision in *Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014), and the Eleventh Circuit decision in *Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013), to support its contrary interpretation. (Opp. at 10.) But those cases are inapposite. The Tenth Circuit and the Eleventh Circuit merely indicate, like the Ninth Circuit has, that the issue remains an open question. *Parson*, 749 F.3d at 887 ("CAFA . . . does not specify who can make such a proposal—the plaintiffs only, or the district court through an order of consolidation or coordination."); *Scimone*, 720 F.3d at 881 ("We leave open the possibility that the state trial judge's *sua sponte* consolidation of 100 or more persons' claims could satisfy the jurisdictional requirements of [CAFA]."). The Court does not construe these cases, which expressly decline to decide the issue, as supporting Pfizer's position.

**B. The Coordinated Proceeding is Not a Proposal for a Joint Trial**

Plaintiffs argue that the state court's *sua sponte* orders here cannot confer mass action jurisdiction for a separate reason—they do not contemplate a joint trial. (Mot. at 20–27.) Plaintiffs claim that, in light of Judge Kuhl's prior orders and statements describing how the coordinated cases would proceed, she clearly was not contemplating a joint trial. (*Id.*) The Court agrees.

The sequence of events that occurred prior to Pfizer's re-removal of the cases demonstrates that the state court's orders to coordinate the cases are not orders for a joint trial. Shortly after this Court remanded the cases to state court on May 23, 2017, Plaintiffs repeatedly attempted to clarify that their desire to coordinate their cases was for pretrial purposes only and not a request for a joint trial. Plaintiffs tried to amend the procedure for joining the JCCP and when they failed on that front, Plaintiffs tried to coordinate the cases through notices of related cases. All along, Plaintiffs represented to Judge Kuhl that they wanted to avoid taking any action that could be construed as a proposal for a joint trial. Although Judge Kuhl did not grant Plaintiffs' requests to amend the JCCP procedure or to relate the cases, she indicated in her orders deep skepticism that the cases here would be jointly tried. She explained that "the fact that the coordination trial judge has the authority to try coordinated cases herself does not mean that the coordination trial judge will conduct the trial in all (or even some) of the coordinated cases, and assuredly does not mean that the coordinated cases will be tried together, either at the same time or before one jury." She stated that where, as here, the claims arise out of injuries from pharmaceutical products, there has never been "any instance in which the claims of more than one party . . . have been tried at the same time or to the same jury." And, she noted that in coordinated proceedings involving thousands of plaintiffs, "[n]o single judge can conduct so many trials, and to attempt to do so would deprive plaintiffs of timely adjudication of their claims."

Given this backdrop, it defies common sense to suggest that Judge Kuhl's subsequent coordination of the cases constituted a proposal for a joint trial. "A proposal for purposes of CAFA's mass action jurisdiction, even an implicit proposal, is a voluntary and affirmative act, and an intentional act. It is not a mere suggestion, and it is not a mere prediction." *Briggs*, 796 F.3d at 1048 (citations and quotations omitted). When Judge Kuhl *sua sponte* ordered the cases be coordinated, she gave no indication that the coordination would be for purposes of a joint trial. In other words, there was no

"voluntary and affirmative act" demonstrating that she was now deciding to rule against Plaintiffs and to deviate from her own prior statements expressing doubt that a joint trial of these cases would, or could, be held.

Pfizer claims that, because Judge Kuhl granted coordination of the cases pursuant to California Code of Civil Procedure section 404.1, which provides that actions can be coordinated "for all purposes," the cases were coordinated for purposes of trial. (Opp. at 16.) But this argument invokes the California procedural rule in a vacuum and ignores the series of events that occurred before the state court. The mere presence of the phrase "for all purposes" in the rule providing for coordination does not mean Judge Kuhl was reversing her prior position that a joint trial of these coordinated cases was unlikely, and does not constitute a "voluntary and affirmative" act necessary to make a "proposal."

## IV. CONCLUSION

Because the state court's orders coordinating the cases in this action are not a proposal for a joint trial, the Court does not have subject matter jurisdiction under CAFA. Accordingly, Plaintiffs' motion to remand is GRANTED.

DATED: May 10, 2018

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE